NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARREN PIEPER,<br><br>                 Plaintiff,<br><br>           v.<br><br>USAA CASUALTY AND PROPERTY INSURANCE COMPANY, *a corporation doing business as* USAA CASUALTY PROPERTY INSURANCE IN THE STATE OF NEW JERSEY<br><br>                 Defendant. | Civil Action No. 23-2331 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

       This matter comes before the Court on Defendant USAA Casualty and Property Insurance Company's ("Defendant") motion to dismiss and to strike (ECF No. 21-1) portions of pro se Plaintiff Darren Pieper's ("Plaintiff" or "Pieper") Amended Complaint (ECF No. 19). Plaintiff opposed (ECF No. 24) and Defendant replied (ECF No. 27). This Court has carefully considered the parties' submissions and decides Defendant's motion without oral argument under Local Civil Rule 78.1. For the reasons set forth herein, Defendant's motion to dismiss is granted and Defendant's motion to strike is denied.

**I.     BACKGROUND**

       From October 2004 to sometime around February 2022, Plaintiff was the owner of real property located at 1064 County Road 523, Flemington, NJ 08822 (the "Property"). (*See* Am. Compl. 1, ¶¶ 2, 38 (alleging that the Property was sold on January 12, 2022), ECF No. 19.) Since

Plaintiff purchased the Property, Defendant alone provided Plaintiff with insurance coverage for the Property and for personal property. (*See id.* ¶¶ 2-3, 5-8.)

Between 2009 and 2017, Defendant paid various small real and personal property loss claims on Plaintiff's behalf. (*Id.* ¶ 11.) Sometime between 2016 and 2018, Plaintiff obtained additional coverage for certain personal property and spoke with Defendant's representative on the phone to do so. (*Id.* ¶ 12.) The personal property coverage limit in his policy (the "Policy") was $2,500. (*See id.* ¶¶ 6, 19.)

In July 2019, Plaintiff was temporarily displaced from his home, but upon leaving, he left his foster son Z.C. ("Z.C.") to care for the home. (*Id.* ¶ 17.) In March 2020, Plaintiff's ex-wife signed an agreement to turn over her stake in the Property. (*Id.* ¶ 25.) In June 2020, PNC Bank ("PNC") informed Defendant that the bank assumed the Property to be "vacant." (*Id.* ¶ 26.) Plaintiff immediately responded to PNC that "the property was occupied by [Z.C.]," and therefore, it was not vacant. (*See id.*) PNC sent confirmation in response to this letter. (*Id.*)

On July 30, 2020, Z.C. reported to police that the Property was broken into. (*Id.* ¶ 27.) Later that summer, Plaintiff's "representative" visited the Property and reported back to Plaintiff that there was "not much personal property to recover." (*Id.* ¶ 28.) Upon learning this information, between December 2020 and June 2021, Plaintiff wrote several letters to Defendant to request a change to his mailing address.[1] (*Id.* ¶ 29.)

In October 2020, Defendant renewed Plaintiff's policy although Defendant believed that the house was "allegedly 'vacant.[2]'" (*Id.* ¶ 30.) In June 2021, Plaintiff sent another letter to

---

[1] There is no clear indication in Plaintiff's allegations if he ever requested a change to the Policy in these correspondences. (*See generally* Am. Compl.) Instead, Plaintiff alleges that his letters were properly sent to Defendant's PO box and clearly stated his intention to change his address. (*Id.* ¶ 29.) Plaintiff alleges he did not hear back from Defendant regarding his address change. (*Id.*)

[2] Plaintiff appears to consider this alleged vacancy a "peril." (Am. Compl. ¶ 30.)

2

Defendant requesting forms to "file a property claim." (*Id.* ¶ 32.) Defendant never responded. (*Id.*) In July 2021, Plaintiff was informed that much of his personal property was stored in the Property's basement and was destroyed by mold, mildew, and/or fungi which was insured damage under the Policy. (*Id.* ¶ 34.) As of August 2021, Defendant still had not responded to Plaintiff's letters, and instead, sent a notice of discontinuation to Plaintiff's previous address. (*Id.* ¶ 35.)

In October 2021, Plaintiff paid his property-insurance premium in full for the period between October 2021 and October 2022. (*Id.* ¶ 37.) On January 12, 2022, however, the Property was sold to a third-party through a sheriff's sale. (*Id.* ¶ 38.) Z.C. remained in the home until November 2022. (*Id.* ¶ 39.) Under the terms of the Policy, Z.C. was a relative, and therefore, the home was never vacant. (*Id.*)

Subsequent to the Property's sale and the termination of the Policy, Plaintiff sent several notices of his intention to file property loss claims. (*Id.* ¶¶ 41, 42.) On October 26, 2022, Defendant issued a refund to Plaintiff for the premium he paid for coverage between October 2021 and October 2022. (*Id.*)

In March 2023, Plaintiff filed this action in state court. (*Id.* ¶ 43.) On April 27, 2023, Defendant removed the action to this Court. (ECF No. 1.) On May 4, 2023, Defendant first moved to dismiss Plaintiff's Complaint. (ECF No. 6.) On November 15, 2023, Defendant's motion was granted in part and denied in part. (Order, ECF No. 17.) Specifically, the Court allowed Plaintiff's breach of contract claim to proceed, but dismissed without prejudice all other of Plaintiff's claims including: (1) vicarious liability; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) specific performance; and (6) punitive damages. (*Id.* ¶ 3.) On

January 4, 2024, Plaintiff filed his Amended Complaint. (Am. Compl.) Defendant again moved to dismiss. (ECF No. 21.) Plaintiff opposed (ECF No. 24), and Defendant replied (ECF No. 27).

## II.  LEGAL STANDARD

### A.  Motion to Dismiss—Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When analyzing a motion to dismiss filed under Rule 12(b)(6), the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Lastly, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Moreover, in considering a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Finally, where a plaintiff proceeds pro se, the complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A pro se litigant, however, "is not absolved from complying with *Twombly* and the federal pleading requirements merely because [the litigant] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

B. **Motion to Strike—Rule 12(f)**

Rule 12(f) allows a court to strike allegations that are "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). The Rule 12(f) standard "essentially translate[s] into application of the standards of a Rule 12(b)(6) motion to dismiss, with the understanding that a motion to strike should be granted sparingly." *Red Hawk Fire & Sec., L.L.C. v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020)) (quoting *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009)) (alteration in original). For purposes of a motion to strike, "[a]n allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardell, L.L.P.*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[3] (3d ed. 2010)). Motions to strike under Rule 12(f) are disfavored and should usually be denied "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . confuse the issues.'" *Red Hawk*, 449 F. Supp. at 459 (quoting *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).

## III. DISCUSSION

In his Amended Complaint, Plaintiff brings four claims:[3] (1) breach of contract ("Count One"); (2) breach of fiduciary duty ("Count Four"); (3) gross negligence ("Count Five"); and (4) punitive damages ("Count Six"). (Am. Compl. ¶¶ 49-82.) Defendant moves to: (1) dismiss counts Four, Five, and Six; and (2) strike certain allegations in the Amended Complaint. (*See* Def.'s Moving Br., ECF No. 21-1.) The Court addresses each separately.

### A. Motion to Dismiss Counts Four, Five, and Six[4]

Defendant moves to dismiss Counts Four and Six on the grounds that these Counts were "already dismissed by the Court as a matter of law" and Count Five on grounds that it was improperly added. (*Id.* at 8-10.) As a preliminary matter, the Court need not reach Defendant's contentions as to Count Six because punitive damages are not a cause of action. They are "a remedy incidental to a cause of action." *Abelard v. Clean Earth, Inc.*, No. 16-5276, 2019 WL 5078779, at *5 (D.N.J. Oct. 9, 2019) (quoting *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000)). As such, Defendant's motion to dismiss Count Six is granted and Plaintiff's punitive damages claim[5] is dismissed with prejudice. The Court's analysis as to Counts Four and Five is set forth below.

---

[3] Plaintiff lists counts two and three as fraudulent misrepresentation and negligent misrepresentation, respectively. (Am. Compl. ¶¶ 58, 59.) Plaintiff concedes, however, that these counts are "inappropriate" in his Amended Complaint. (*Id.*) As such, the Court interprets Plaintiff as voluntarily dismissing counts two and three without prejudice. Nevertheless, the Court will refer to the remaining Counts as numbered by Plaintiff in his Amended Complaint.

[4] The Court denies Defendant's request to dismiss the Amended Complaint in its entirety due its untimely filing. (Def.'s Moving Br. 6-7.) Instead, the Court grants Plaintiff's extension request (ECF No. 23) because Plaintiff is pro se and provides a good faith reason for filing his Amended Complaint late. (*Id.*)

[5] Plaintiff's ability to collect punitive damages, if successful on a claim that allows for them, is unaffected by this ruling.

>    1.   *Count Four: Breach of Fiduciary Duty*

Defendant first contends that this Court should dismiss Plaintiff's renewed breach of fiduciary duty claim because the Court previously found that New Jersey law does not allow for a fiduciary duty claim in the first-party insurance context. (Def.'s Moving Br. 8.) Plaintiff, however, in his Amended Complaint adds a plethora of allegations to clarify his breach of fiduciary duty claim. (Am. Compl. ¶¶ 61-67.) Specifically, Plaintiff now clearly alleges that the alleged breach was that Defendant renewed the Policy, knowing the Property was vacant, without Defendant's agent advising Plaintiff of a better or different policy that may be more appropriate for his situation. (Am. Compl. ¶ 61.)

Upon reviewing Plaintiff's renewed allegations, it appears that Plaintiff does not intend to bring a breach of fiduciary duty claim at all; rather, Plaintiff appears to allege that Defendant failed to exercise good faith and reasonable skill in advising Plaintiff of available coverage. Accordingly, the Court interprets Plaintiff's claim as such and assesses the sufficiency of his allegations against the appropriate standard.

The doctrine that Plaintiff relies upon in bringing Count Four stands on shaky ground. Specifically, Plaintiff relies on several New Jersey cases that stand for the proposition that "[a]gents, like brokers, are obligated to exercise good faith and reasonable skill in advising insureds and informing them of available coverage." *President v. Jenkins*, 853 A.2d 247, 257 (N.J. 2004) (quoting *Weinisch v. Sawyer*, 587 A.2d 615, 618 (N.J. 1991)); *see also Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 85 (N.J. 1993) (collecting cases). Upon closer review, however, it appears that each cite that Plaintiff provides leads invariably to a 2008 New Jersey Supreme Court holding that the common-law duty which Plaintiff seeks to impose upon Defendant was abrogated. *Pizzullo v. N.J. Mfrs. Ins. Co.*, 952 A.2d 1077, 1086 (N.J. 2008) (finding that N.J. Stat. Ann. § 17:28-1.9

"was enacted to abrogate the duty imposed on insurers, insurance agents, and brokers by earlier judicial decisions making them 'liable for failing to advise their customers of the availability of additional[6] coverage'"); (Am. Compl. ¶¶ 61, 64, 65.[7]) Given this abrogation, and the absence of any case law to suggest that the common-law duty Plaintiff seeks to impose remains viable in the property insurance context, the Court grants Defendant's motion to dismiss Count Four.

        2.      *Count Five: Gross Negligence*

Defendant next moves to dismiss Plaintiff's gross negligence claim contending that Plaintiff was not given leave to add new causes of action against Defendant. (Def.'s Moving Br. 11 (citing Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the [C]ourt's leave.")).) The Court disagrees. While Defendant is correct that this Court did expressly require that Plaintiff "cure the deficiencies as stated in the . . .

---

[6] The Court notes that N.J. Stat. Ann. § 17.28-1.9 appears to only be applicable in the context of "underinsured and uninsured motorist coverage." *Pizzullo*, 952 A.2d at 1086. The Court's concerns as to abrogation are not entirely mitigated by this distinction, however, because it appears all New Jersey law recognizing the common-law duty that Plaintiff seeks to impose upon Defendant arises, in some way, from the motorist coverage context.

[7] *President*, 853 A.2d at 257 (finding that agents are obligated to exercise good faith and reasonable skill in advising insureds on available coverages but citing to *Weinisch v. Sawyer*, 587 A.2d 615, 619 (N.J. 1991) which was abrogated by N.J. Stat. Ann. § 17:28-1.9 because it set forth such rule in the underinsured motorist context); *Sears*, 634 A.2d at 85 (stating that "[i]t is well established that insurance companies . . . have a duty to advise insureds of their coverage needs where the insurer is aware of a particular peril" but citing to three cases in support of this proposition which arose in the underinsured or uninsured motorist context and were abrogated by N.J. Stat. Ann. § 17:28-1.9 (*Wasserman v. Wharton, Lyon & Lyon*, 538 A.2d 1270, 1276 (N.J. Super. Ct. App. Div. 1988), *Walker v. Atl. Chrysler Plymouth*, 523 A.2d 665, 668 (N.J. Super. Ct. App. Div. 1987), and *Sobotor v. Prudential Prop. & Cas. Ins. Co.*, 491 A.2d 737, 739 (N.J. App. Div. Super. Ct. 1984)) and one case which only applies to insurance *brokers*, not agents, i.e., *Rider v. Lynch*, 201 A.2d 561 (N.J. 1964)); *Avery v. Arthur E. Armitage Agency*, 576 A.2d 907, 910 (N.J. Super. Ct. App. Div. 1990) (arising in the uninsured and underinsured motorist context and finding that insurance agents owe the insured a duty of care, the common-law holding that was abrogated by N.J. Stat. Ann. § 17:28-1.9); *Carter Lincoln-Mercury Inc. v. Emar Grp., Inc.*, 638 A.2d 1288, 1291 (N.J. 1994) (holding that "[a]t common law both agents and brokers, when acting on behalf of the insured, owe the insured a duty of care" but citing to *Weinisch*, *Avery*, and *Sobotor* to support this proposition).

Memorandum Opinion," such express requirement was not intended to restrict, and indeed the Court did not expressly prevent, Plaintiff from filing an additional claim or otherwise amending his Complaint at this early stage. As such, under Rule 15(a)(2), Plaintiff appropriately amended his complaint by adding a gross negligence claim with the Court's leave.[8] Accordingly, Defendant's motion to dismiss Plaintiff's gross negligence claim is denied.

### B. Motion to Strike

Defendant also moves to strike a series of allegations in Plaintiff's Amended Complaint as impertinent and immaterial. (Def.'s Moving Br. 12-16.) As the Court noted above, motions to strike under Rule 12(f) are disfavored and should usually be denied "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . confuse the issues.'" *Red Hawk*, 449 F. Supp. 3d at 459 (quoting *Garlanger*, 223 F. Supp. 2d at 609). Here, Defendant generally seeks to strike allegations in the Amended Complaint relating to: (1) Plaintiff's history of insurance coverage with Defendant; (2) Plaintiff's status as a foster parent; (3) Plaintiff's loss of property; (4) the procedural history in this matter; and (5) the mention of settlement discussions between the parties.[9] (Def.'s Moving Br. 12-16.) The Court finds that due to Plaintiff's pro se status and the early-stage of this litigation, all of Defendant's contentions are premature and/or inappropriate for a motion to strike. While some material that Defendant targets

---

[8] Substantively, Defendant does not challenge Plaintiff's gross negligence claim.

[9] The Court provides further context for its finding to this end. The Court agrees with Defendant that settlement discussions between parties are typically inadmissible under the Federal Rules of Evidence. (Def.'s Moving Br. 13); Fed. R. Evid. 408. Inadmissibility, however, does not necessarily equate to an impermissible pleading that the Court must strike at the pleading stage. *See McAndrews L. Off. v. Sch. Dis. of Phila.*, No. 06-5501, 2007 WL 515412, at *3 (E.D. Pa. Feb. 9, 2007) (denying motion to strike complaint referencing settlement documents which could be inadmissible under Rule 408). Moreover, the inadmissibility of settlement discussions is predicated on *how* it is used by the party introducing the evidence. Fed. R. Evid. 408 (setting forth "Prohibited Uses" but not summarily excluding references to settlement discussions). As such, Defendant's motion to strike is denied.

9

to be stricken *may* ultimately prove immaterial or irrelevant, prior to discovery and the maturation of Plaintiff's claims, it is not yet certainly so and therefore it would be inappropriate for the Court to strike Plaintiff's allegations. As such, Defendant's motion to strike is denied in its entirety.

## IV. CONCLUSION

For the above reasons, the Court grants in part and denies in part Defendant's motion to dismiss. An appropriate order will follow this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**